UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Richard Burton Paul Monroe

Chapter 13
Case No. 18-43940 KHS

Debtor.

NOTICE OF HEARING AND
MOTION FOR RELIEF FROM
AUTOMATIC STAY

---

TO:   Richard Burton Paul Monroe, INCLUDING TRUSTEE AND OTHER
      INTERESTED PARTIES as specified in Local Rule 9013-3(a).

1.   LoanCare, LLC ("Movant") by its undersigned attorneys, moves the court for the relief requested below and gives notice of hearing herewith.

2.   The Court will hold a hearing on this motion at 1:30 p.m. on Thursday February 13, 2020, in Courtroom 8 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 or as soon thereafter as counsel can be heard.

3.   Any response to this motion must be filed and delivered not later than Friday February 7, 2020, which is five days before the time set for the hearing (including Saturdays, Sundays, and Holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.   This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rules of Bankruptcy Procedure 5005 and Local Rule 1070-1, and is a core proceeding.  The petition commencing this Chapter 13 case was filed on December 21, 2018.  The case is now pending in this Court.

5.      This motion arises under 11 U.S.C. § 362(d) and Federal Rules of

Bankruptcy Procedure 4001.  This motion is filed pursuant to Federal Rules of

Bankruptcy Procedure 9014 and Local Rules 4001-1 and 9013.  Movant requests relief

with respect to a mortgage lien encumbering real property of debtor.

6.      The debtor is the owner of real property located at 368 Wilderness Dr,

Chaska, MN 55318-1578, Carver County, legally described as:

> Unit No. 29, CIC Number 39, Pioneer Pointe Coach Homes, a
> Condominium, Carver County, Minnesota.

7.      Richard Monroe executed a promissory note dated May 14, 2007, and

Richard B.P. Monroe executed a mortgage dated May 14, 2007, recorded in the office

of the County Recorder July 2, 2007, as Document No. A467205.  The mortgage was

subsequently assigned to Movant.  The note, mortgage, amendments, modifications,

and assignments, if any, are attached as Exhibit C.

8.      Mortgage payments received from the borrower are credited to the month

due, pursuant to the terms of the mortgage and note.

9.      The debtor filed a Chapter 13 plan on December 21, 2018 [Docket No. 2],

which was confirmed by Court Order on February 21, 2019 [Docket No. 16].  The

confirmed plan provided among other terms, the following:

**Part 7. HOME MORTGAGES IN DEFAULT (§§ 1322(b)(5) and 1322(e)) —** The trustee will cure payment
defaults on the following claims secured only by a security interest in real property that is the
debtor's principal residence. The debtor will pay directly to creditors all payments that come due
after the date the petition was filed. The creditors will retain liens. **All following entries are
estimates.** The trustee will pay the actual amounts of default.

Notwithstanding the foregoing provision seven of said plan, the debtor has not

maintained current post-petition payments with respect to said note and mortgage

while this case is pending.  The debtor is therefore in default under the terms of the

confirmed Chapter 13 plan.

10.    As of January 22, 2020, the debtor is delinquent in the amount of $2,858.97 less the suspense balance of $28.73 for a default total of $2,830.24. As of the hearing date the next payment for February 1, 2020 will also be due. A detailed payment history is being filed herewith. (See Movant Affidavit & Exhibit B, Local Form 4001-1)

11.    The debtor's delinquency in the amount of $2,830.24 under the terms of the Mortgage constitutes "cause" within the meaning of 11 U.S.C. § 362(d)(1), entitling Movant to relief from automatic stay.

12.    The unpaid payoff balance due under the mortgage and note as of January 1, 2020 is $122,748.29. (See Affidavit of Movant, paragraph 7).

13.    The debtor scheduled the value of the property as $180,000.00. The Carver County Assessor's office has estimated the market value for 2019 as $178,300.00 (See Exhibit A, County Value).

14.    The debtor scheduled a second mortgage in favor of Select Portfolio Servicing in the amount of $40,628.00.

15.    By reason of the foregoing, the debtor is in default on payments under the note, mortgage, and Chapter 13 plan. Movant is inadequately protected and desires to protect its interest in the property and requests the court to vacate the stay of actions and allow enforcement of the mortgage pursuant to Minnesota law.

16.    The Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement and allow Movant to contact the debtor via telephone or written correspondence to offer such an agreement, at its discretion.

17.    By reason of the foregoing, Movant is entitled to have the automatic stay lifted and vacated so it can commence the mortgage foreclosure proceedings pursuant to Minnesota Statutes.  The Movant also requests that any order granting its motion be effective immediately, notwithstanding Federal Rules of Bankruptcy Procedure 4001(a)(3). This motion is likely to go by default. Movant remains inadequately protected. Each day that passes results in lost interest, which is prejudicial to Movant; therefore, Movant believes there is no reason for delaying entry of the order.

**WHEREFORE**, Movant, by its undersigned attorney, moves the Court for an order modifying the automatic stay of 11 U.S.C. § 362(a) so as to permit Movant to foreclose its mortgage on the Property and for such other relief as the Court may deem to be just, fair and equitable.

Dated:  January 29, 2020

USSET, WEINGARDEN & LIEBO, P.L.L.P.

By: /E/ Kevin T. Dobie
    Kevin T. Dobie, #388322
    Attorney for Movant
    4500 Park Glen Road, #300
    Minneapolis, MN 55416
    (952) 925-6888
    kevin@uwllaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

IN RE:

RICHARD BURTON PAUL MONROE
DEBTOR

CHAPTER 13
CASE NO. 18-43940 KHS

AFFIDAVIT OF ___KRISTINA ALDRIDGE___

**IN SUPPORT OF MOTION BY LoanCare, LLC FOR RELIEF FROM THE**
**AUTOMATIC STAY**

KRISTINA ALDRIDGE
_____, being first duly sworn on oath, deposes and states as
follows:

1.      I am over the age of eighteen and am authorized to make this
affidavit on behalf of LoanCare, LLC.

2.      I am presently a ___Assistant Secretary___ for LoanCare, LLC. In
this position, I have access to the business records of LoanCare, LLC and my
responsibilities include ascertaining and verifying amounts due and payable as
to delinquent bankruptcy accounts.

3.      The facts stated in this affidavit are based upon information that I
obtained by reviewing records maintained in the ordinary course of LoanCare,
LLC's business, as part of regularly conducted business activity, by or from
information transmitted by person(s) with knowledge of the events described
therein, at or near the time of the event described.

4.      Richard Monroe executed a note, dated May 14, 2007, in favor of
CitiMortgage, Inc. in the original principal sum of $146,300.00 (the note).

5.      LoanCare, LLC is the servicer of the loan and holds the note.

6.      The note is secured by a mortgage encumbering certain real
property commonly known as 368 Wilderness Dr, Chaska, MN, 55318-1578
and legally described as follows:

UNIT NO. 29, CIC NUMBER 39, PIONEER POINTE COACH HOMES,
A CONDOMINIUM, CARVER COUNTY, MINNESOTA.

7.      The unpaid payoff balance of this loan as of January 1, 2020 is
$122,748.29.

8.      Interest continues to accrue from the date set forth in paragraph
7, above, at the rate of 5.250% per year.

9.    The debtor scheduled the value of the property as $180,000.00. The estimated market value for 2019 is $178,300.00.  An online printout of the county tax page for the property is attached to this affidavit as "Exhibit A".

10.    Attached as "Exhibit B" is a true and correct copy of the loan history beginning on the date of default applicable to this motion provided on Local Form 4001-1.

11.    The debtor scheduled a second mortgage in favor of Select Portfolio Servicing in the amount of $40,628.00.

12.    The note, mortgage, amendments, modifications, and assignments, if any, are attached hereto as "Exhibit C" and are true and accurate copies of the originals.

I declare under penalty of perjury that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

BY: _____
Name: **KRISTINA ALDRIDGE**
Title: **Assistant Secretary**
Date: January 29, 2020

Subscribed and sworn to before me
this 29th day of JAN , 2020 by
KRISTINA ALDRIDGE

_____, Notary Public

State of VIRGINIA
My Commission expires: 3.31.23

Personally Known ___✓___ OR
Produced Identification _____.

Type of Identification Produced:
_____

MILDRED ANN NUGENT
NOTARY PUBLIC
REGISTRATION # 180945
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
3.31.23

**Carver County**
600 East 4th Street, P.O. Box 69
Chaska, MN 55318 0069
952 361 1910 • www.co.carver.mn.us

For the following visit our website at www.co.carver.mn.us
• Pay your taxes online
• Sign up for our Tax Payment Reminder
• Print additional copies of your Tax Statement

Property ID #: ▮▮▮▮▮▮

Taxpayer:  RICHARD B P MONROE
368 WILDERNESS DR
CHASKA MN 55318-1578

## 2019 Property Tax Statement

### VALUES AND CLASSIFICATION

| Taxes Payable Year: | 2018 | 2019 |
|---|---|---|
| **Step 1** Estimated Market Value: | 176,900 | 178,300 |
| Homestead Exclusion: | | |
| Taxable Market Value: | 176,900 | 178,300 |
| New Improvements/ Expired Exclusions: | | |
| Property Classification: | Res Non-Hstd | Res Non-Hstd |

| **Step 2** | **PROPOSED TAX** |
|---|---|
| | $2,260.00 |

| **Step 3** | **PROPERTY TAX STATEMENT** | |
|---|---|---|
| First half taxes due: | May 15 | 1,149.00 |
| Second half taxes due: | October 15 | 1,149.00 |
| Total Taxes Due in 2019: | | 2,298.00 |

## $$$ REFUNDS?

*You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.*

Bill #: ▮▮▮▮
Property Address:
368 WILDERNESS DR
CHASKA MN 55318-1578

Property Description:
Section 28 Township 116 Range 023
PIONEER POINTE COACH HOMES
UNIT 29 CIC #39 FIFTH SUPPLEMENTAL

Line 13 Special Assessment Detail:
HAZ & SOLID WASTE FEE RES/AG      33.00

Principal:  33.00
Interest:

### Tax Detail for Your Property:

| | Taxes Payable Year: | | 2018 | 2019 |
|---|---|---|---|---|
| **Tax and Credits** | 1. Use this amount on Form M1PR to see if you are eligible for a property tax refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. ☐ | | | |
| | 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. | | | |
| | 3. Property taxes before credits | | 2,272.00 | 2,265.00 |
| | 4. Credits that reduce property taxes | A. Agricultural market value credits | | |
| | | B. Other Credits | | |
| | 5. **Property taxes after credits** | | 2,272.00 | 2,265.00 |
| **Property Tax by Jurisdiction** | 6. County | A. CARVER COUNTY | 661.63 | 651.38 |
| | | B. CO RAIL AUTHORITY | 2.02 | 1.86 |
| | 7. City or Town   CITY OF CHASKA | | 481.79 | 493.49 |
| | 8. State General Tax | | | |
| | 9. School District   SD 0112 Eastern Carver Cnty | | | |
| | | A. Voter Approved Levies | 711.76 | 723.72 |
| | | B. Other Local Levies | 295.41 | 277.31 |
| | 10. Special Taxing Districts | A. Metro Council | 14.63 | 11.59 |
| | | B. Metro Mosquito Control | 7.89 | 7.53 |
| | | C. Metro Transit District | 24.17 | 25.92 |
| | | D. Carver County CDA | 29.01 | 28.99 |
| | | E. Watershed | 17.10 | 16.53 |
| | | F. City HRA/EDA | 26.59 | 26.68 |
| | 11. Non-school voter approved referenda levies | | | |
| | 12. Total property tax before special assessments | | 2,272.00 | 2,265.00 |
| | 13. Special Assessments   Interest:   Principal: 33.00 | | 30.00 | 33.00 |
| | 14. **TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS** | | **2,302.00** | **2,298.00** |

---

## 2nd HALF PAYMENT STUB - PAYABLE 2019

**2**

PLEASE INDICATE YOUR ADDRESS CORRECTION
ON REVERSE SIDE OF THIS PAYMENT STUB.
Property ID#: ▮▮▮▮

OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID BY
ESCROW COMPANY GREEN TREE OUTSOURCING-LPS

Bill #: ▮▮▮▮

Taxpayer:
RICHARD B P MONROE
368 WILDERNESS DR
CHASKA MN 55318-1578

To pay online go to www.co.carver.mn.us
The online payment feature is available for a current year tax payment.
Delinquent payments cannot be paid online.

**TO AVOID PENALTY PAY ON OR BEFORE: October 15**

| SECOND 1/2 TAX AMOUNT DUE: | 1,149.00 |
|---|---|

Make checks payable to and remit to:
**Carver County**
**P.O. Box 69**
**Chaska, MN 55318-0069**

Your cancelled check is proof of payment  Please write your Property ID # on your check
Postdated checks are not held  Only official U S Postmark determines payment mail date
No receipt sent unless requested and is void until check is honored  Manufactured Home
taxes of $50 00 or less and Real Estate taxes of $100 00 or more must be paid in full
If you pay your taxes late, you will be charged a penalty  See back for details

---

## 1st HALF PAYMENT STUB - PAYABLE 2019

**1**

PLEASE INDICATE YOUR ADDRESS CORRECTION
ON REVERSE SIDE OF THIS PAYMENT STUB.
Property ID#: ▮▮▮▮

OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID
BY ESCROW COMPANY GREEN TREE OUTSOURCING-LPS

Bill #: ▮▮▮▮

Taxpayer:
RICHARD B P MONROE
368 WILDERNESS DR
CHASKA MN 55318-1578

To pay online go to www.co.carver.mn.us
The online payment feature is available for a current year tax payment.
Delinquent payments cannot be paid online.

**TO AVOID PENALTY PAY ON OR BEFORE: May 15**

| FULL TAX AMOUNT: | 2,298.00 |
|---|---|
| FIRST 1/2 TAX AMOUNT DUE: | 1,149.00 |

Make checks payable to and remit to:
**Carver County**
**P.O. Box 69**
**Chaska, MN 55318-0069**

 EXHIBIT A

Your cancelled check is proof of payment  Please write your Property ID # on your check
Postdated checks are not held  Only official U S Postmark determines payment mail date
No receipt sent unless requested and is void until check is honored  Manufactured Home
taxes of $50 00 or less and Real Estate taxes of $100 00 or more must be paid in full
If you pay your taxes late, you will be charged a penalty  See back for details

**In Re:**

Richard Burton Paul Monroe

<span style="color:red">Local Form 4001-1</span>

**Loan History.** Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charges* | Description of other Charges |
|---|---|---|---|---|---|---|
| | | | | **CHARGES** | | |
| 1/1/2019 | | $761.27 | $191.83 | | | |
| 2/1/2019 | | $761.27 | $191.83 | | | |
| 2/28/2019 | $974.93 | | | | | Applied to 01/01/2019 and Suspense |
| 3/1/2019 | | $761.27 | $191.83 | | | |
| 4/1/2019 | | $761.27 | $191.83 | | | |
| 4/22/2019 | $953.10 | | | | | Applied to 02/01/2019 |
| 5/1/2019 | | $761.27 | $191.83 | | | |
| 5/14/2019 | $953.10 | | | | | Applied to 03/01/2019 |
| 6/1/2019 | | $761.27 | $191.83 | | | |
| 6/18/2019 | $953.10 | | | | | Applied to 04/01/2019 |
| 7/1/2019 | | $761.27 | $191.83 | | | |
| 7/19/2019 | $953.10 | | | | | Applied to 05/01/2019 |
| 8/1/2019 | | $761.27 | $191.83 | | | |
| 8/19/2019 | $953.10 | | | | | Applied to 06/01/2019 |
| 9/1/2019 | | $761.27 | $191.83 | | | |
| 10/1/2019 | | $761.27 | $191.83 | | | |
| 10/17/2019 | $953.10 | | | | | Applied to 07/01/2019 |
| 11/1/2019 | | $761.27 | $191.83 | | | |
| 11/26/2019 | $953.10 | | | | | Applied to 08/01/2019 |
| 12/1/2019 | | $761.27 | $191.83 | | | |
| 12/17/2019 | $953.10 | | | | | Applied to 09/01/2019 |
| 1/1/2020 | | $761.27 | $191.50 | | | |
| 1/20/2020 | $960.00 | | | | | Applied to 10/01/2019 and Suspense |
| TOTALS | $9,559.73 | $9,896.51 | $2,493.46 | $0.00 | $0.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

\* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.)

**Note: Column (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under

EXHIBIT B

note and/or mortgage and sought by Movant to resolve motion          $1,031.00

Current Default Amount Claimed in the Motion          $2,830.24

Escrow Balance (amounts held for payment of taxes, insurance, etc.)

Suspense Account Balance (amount of unapplied payments)          $28.73

# NOTE

May 14, 2007           Coon Rapids           Minnesota
[Date]               [City]               [State]

368 WILDERNESS DR,       CHASKA, MN 55318-1578

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 146,300.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CitiMortgage, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.250** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **First** day of each month beginning on **July 1, 2007** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2037** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1000 Technology Drive, O' Fallon, MO 63368-2240** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 900.79

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

EXHIBIT C

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15                    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000                    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

                                                     (Seal)
                      Richard Monroe                        -Borrower

*(Sign Original Only)*

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   (Seal)
Richard Monroe                                     -Borrower

*(Sign Original Only)*



TITLE COPY **Document No.**
**A 467205**

OFFICE OF THE
COUNTY RECORDER
CARVER COUNTY, MINNESOTA

Mortgage Registration Tax of $ 336 49

paid on _____7-2-07_____ **(Date)**

Conservation Fee Paid

Laurie Engelen Carver County Auditor

By: _____ **(Deputy)**

Fee: $ 46.00  Check#: 7221920616

Certified Recorded on 07-02-2007 at 01:00 ☐ AM ☑ PM

467205

Carl W Hanson Jr
County Recorder

---

[Space Above This Line For Recording Data]

# MORTGAGE

MIN

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 14, 2007 together with all Riders to this document.

---

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3024  1/01

VMP ®-6A(MN) (0005).02

Page 1 of 15          Initials: Ran

VMP Mortgage Solutions, Inc.

(B) "Borrower" is Richard B.P. Monroe, Single Man

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is CitiMortgage, Inc.

Lender is a  Corporation
organized and existing under the laws of  New York
Lender's address is  1000 Technology Drive, O' Fallon, MO  63368-2240

(E) "Note" means the promissory note signed by Borrower and dated  May 14, 2007
The Note states that Borrower owes Lender  One Hundred Forty Six Thousand Three Hundred
Dollars
(U.S. $146,300.00                      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  June 1, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | [X] Condominium Rider | Second Home Rider |
|---|---|---|
| Balloon Rider | Planned Unit Development Rider | 1-4 Family Rider |
| VA Rider | Biweekly Payment Rider | Other(s) [specify] |

Other(s):

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

Initials: _RM_



Form 3024   1/01
CitiMortgage 3 2.8.13 V2

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County                                      of CARVER                                      :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]:

Unit No. 29, CIC Number 39, Pioneer Pointe Coach Homes, a Condominium, Carver County, Minnesota.

Parcel ID Number:                                   which currently has the address of
368 WILDERNESS DR                                                         [Street]
CHASKA                                     [City], Minnesota   55318-1578     [Zip Code]
("Property Address"):



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.



Initials: 

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.




Initials: R M

-6A(MN) (0005).02                     Page 5 of 15                     Form 3024   1/01
CitiMortgage 3.2.8.13 V2

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.



Initials: RM

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's



knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and



Lender providing for such termination or until termination is required by Applicable Law. Nothing in this *Section 10* affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for *Mortgage Insurance*, or *any other* terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless



VMP ®-6A(MN) (0005).02

Page 9 of 16

Initials: RM

Form 3024   1/01
CitiMortgage 3.2.8.13 V2

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal



Initials: RM

Page 10 of 15

Form 3024  1/01
CluMortgage 3.2.8.13 V2

owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security



Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

 

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

25. Interest on Advances. The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.



Initials: _____

-6A(MN) (0005).02

Page 13 of 15

Form 3024   1/01
CitiMortgage 3.2.8.13 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____                                        _____ (Seal)
                                                                                                        -Borrower
                                                                        Richard Monroe
                                                                        (Sign Original Only)

VMP -6A(MN) (0005).02                    Page 14 of 15                    Form 3024   1/01
                                                                        CitiMortgage 3.2.8.13 V2

STATE OF MINNESOTA,          ANOKA                    County ss:

On this      14th    day of      May , 2007                , before me appeared

RICHARD B.P. MONROE, SINGLE MAN

to me personally known to be the person(s) described in and who executed the foregoing instrument and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
Notary Public
My Commission Expires:

This instrument was drafted by:
CitiMortgage, Inc.
699 Walnut
Des Moines, IA  50309

Tax statements for the real property described in this instrument should be sent to:
CitiMortgage, Inc.
P.O. Box 1800
Attn: Tax Dept
Farmington Hills, MI  48334-3357


-6A(MN) (0005).02

Page 15 of 15

Initials RM

Form 3024  1/01
CitiMortgage 3.2.8.13 V2

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 14        day of May, 2007                   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to CitiMortgage, Inc.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
368 WILDERNESS DR,            CHASKA, MN 55318-1578

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
Pioneer Pointe Coach Homes

[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP ®-8R (0411).01
Page 1 of 3          Initials: _RM_

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: RM

Page 2 of 3

Form 3140 1/01
CitiMortgage 3.2.8.13 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
Borrower

Richard Monroe

Page 3 of 3

Form 3140 1/01
CitiMortgage 3.2.8.13 V2

Time Wise Abstract and Recording
15710 Kiowa St. NW
Andover, MN 55304
612-987-9280

Document #:  A672434
--------------------------------------------------
Date:  01-09-2019  Time:  09:20 AM  Pages: 1
Recording Fee:  $46.00

Paid on  01-09-2019
County: Carver  State: MN
Requesting Party: Nationwide Title Clearing Inc.
            Kaaren Lewis
            County Recorder

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **DITECH FINANCIAL LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 2100 E. ELLIOT RD., T314, TEMPE, AZ 85284 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**.

Said Mortgage was dated 05/14/2007, executed by **RICHARD B.P. MONROE AKA RICHARD MONROE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS** and filed for record on 07/02/2007 as **Document # A 467205**, in the office of the County recorder of **CARVER** County, **Minnesota**.

**Dated this 08th day of January in the year 2019**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**



**ERCILIA GREEN**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA     COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 08th day of January in the year 2019, by Ercilia Green as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

Document Number: **A686461**

Filed and/or Recorded on
Nov 14, 2019 10:54 AM

Office of the County Recorder/Registrar of Titles
Carver County, Minnesota
Kaaren Lewis, County Recorder

Deputy CS
Document Recording Fees                $ 46.00
------------------------------------------------------------------
*Document Total*                        $ 46.00

Requesting Party: Nationwide Title Clearing Inc.
Pages: 1

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., BLDG 94, Mailstop T314, TEMPE, AZ 85284, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45th FLOOR, NEW YORK, NY 10105 (212)798-6100, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was dated 05/14/2007, executed by **RICHARD B P MONROE, AKA RICHARD MONROE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS** and filed for record on 07/02/2007 as **Document # A 467205**, in the office of the County recorder of **CARVER** County, **Minnesota**.

**Dated this 13th day of November in the year 2019**
**DITECH FINANCIAL LLC**

**DANIELLE BURNS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA      COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 13th day of November in the year 2019, by Danielle Burns as VICE PRESIDENT of DITECH FINANCIAL LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

VICKY MCCOY
COMM EXPIRES: 12/18/2022

VICKY MCCOY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG285301
EXPIRES: 12/18/2022

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: Ditech Financial LLC, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

Filed and/or Recorded on
Dec 17, 2019 9:47 AM

Office of the County Recorder/Registrar of Titles
Carver County, Minnesota
Kaaren Lewis, County Recorder

Deputy KL

| Document Recording Fees | $ 46.00 |
| --- | --- |
| **Document Total** | $ 46.00 |

Requesting Party: Usset, Weingarden & Liebo PLLP
Pages: 1

## ASSIGNMENT OF MORTGAGE

MIN # ▮▮▮▮▮▮▮▮
MERS Telephone No. 1-888-679-6377
P.O. Box 2026, Flint, MI 48501-2026

FOR VALUABLE CONSIDERATION, New Residential Mortgage LLC, a limited liability company, Assignor, hereby assigns and transfers to

LoanCare, LLC, Assignee, 3637 Sentara Way, Virginia Beach, VA 23452,

the Assignor's interest in the Mortgage dated May 14, 2007, executed by Richard B.P. Monroe, as mortgagor to Mortgage Electronic Registration Systems, Inc. its successors and assigns as mortgagee, filed for record in the office of the Carver County Recorder July 2, 2007, Document No. A467205.

Assignor covenants with Assignee, its successors and assigns, that Assignor has good right to assign and transfer the same.

New Residential Mortgage LLC by LoanCare, LLC
as its attorney in fact under a Limited Power of Attorney**

By: _Chris P. Aldridge_   Kristina Aldridge
Its: _Assistant Secretary_
Date _12/13/2019_

STATE OF VIRGINIA)
COUNTY OF VIRGINIA BEACH
CITY)

The foregoing instrument was acknowledged before me this 13th day of DECEMBER, 2019, by KRISTINA ALDRIDGE the ASSISTANT SECRETARY of LoanCare, LLC as its attorney in fact for New Residential Mortgage LLC, on behalf of the company.

_Mildred Ann Nugent_
(SIGNATURE OF PERSON TAKING ACKNOWLEDGMENT)

THIS INSTRUMENT WAS DRAFTED BY:
USSET, WEINGARDEN, & LIEBO, P.L.L.P.
4500 Park Glen Road #300
Minneapolis, MN 55416
(952) 925-6888

MILDRED ANN NUGENT
NOTARY PUBLIC
REGISTRATION # 180946
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
3. 31. 23

**Limited Power of Attorney Document No. A682279

----------------[Space Above This Line for Recording Data]-----------------

## LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made March 8, 2010, between RICHARD MONROE, , , ("Borrower") whose address is , ,  and CitiMortgage, Inc. ("Lender"), whose address is 1000 Technology Drive, O'Fallon, MO  63368-2240, and Mortgage Electronic Registration Systems, Inc., whose address is P.O. Box 2026, Flint, MI 48501-2026 ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 05/14/07, and recorded on 06/02/07or Document No. A467205, of the Recorders Office of the Records of CARVER COUNTY, Minnesota, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 368 WILDERNESS DR, CHASKA, MN  55318-1578, the real property described being set forth in the attached LEGAL DESCRIPTION, or as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/01/10, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 151,422.98, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. (The current unpaid principal balance now due and owing of $ 142,213.02, plus the total capitalized amount of $ 9,209.96 equal the Unpaid Principal Balance of $ 151,422.98.)

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first **five** years at the yearly rate of **2.000%**, from **04/01/10** and Borrower promises to pay monthly payments of principal and interest in the amount of **$ 531.25**, beginning on **05/01/10**. During the **sixth** year, interest will be charged at the yearly rate of **3.000%**, from **04/01/15**, and Borrower shall pay monthly payments of principal and interest in the amount of **$ 599.63** beginning on **05/01/15**. During the **seventh** year, interest will be charged at the yearly rate of **4.000%**, from **04/01/16**, and Borrower shall pay monthly payments of principal and interest in the amount of **$ 670.39** beginning on **05/01/16**. During the **eighth** year, interest will be charged at the yearly rate of **5.000%**, from **04/01/17**, and Borrower shall pay monthly payments of principal and interest in the amount of **$ 743.06** beginning on **05/01/17**.  During the **ninth** year and continuing thereafter until the Maturity date (as hereinafter defined), interest will be charged at the yearly rate of **5.250%**, from **04/01/18**, and Borrower shall pay monthly payments of principal and interest in the amount of **$ 761.27** beginning on **05/01/18** and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on **07/01/42** (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

Form 3162  (rev. 1/09)
MODMERS2.STP (10/2006)

Borrower will make such payments at CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240 or at such other place as Lender may require.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed into, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument            Form 3162  (rev. 1/09)
Page 2 of 5                                                                          MODMERS2.STP (10/2006)

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.


**RICHARD MONROE**                     5-10-10

                                      Date


WITNESS                               WITNESS
SIGNATURE:                            SIGNATURE:

PRINT NAME: Bryon Peterson            PRINT NAME: Brian Moore


**Mortgage Electronic Registration Systems, Inc. ("MERS"), Mortgagee**


By:_____            Prepared By: CitiMortgage, Inc.
Title: Vice President                              1000 Technology Drive
                                                   O'Fallon, MO 63368-2240
                                                   Latory Lakes


LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument          Form 3162  (rev. 1/09)
Page 3 of 5                                                                         MODMERS2.STP (10/2006)

----------------[Space Below This Line for Acknowledgments]----------------

State of _Minnesota_ )
) SS
County of _Hennepin_ )

**On this** ___10th___ day of ___MAY___, ___2010___, before me personally
appeared <u>RICHARD MONROE</u>, to me known or proved to be the person(s) described in and who
executed the foregoing instrument, and acknowledged that <u>HE/SHE/THEY</u> executed the same as
<u>HIS/HER/THEIR</u> free act and deed.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the
County and State aforesaid, the day and year first above written.

Notary Public _____

My Commission Expires: __Jan 31, 2015__



JEAN E. FELLMAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument       Form 3162 (rev. 1/09)
Page 4 of 5                                                                      MODMERS2.STP (10/2006)

-----------------[Space Below This Line for Acknowledgments]------------------

State of Missouri                              )
                                               )
County of St. Charles                          )

**On** _____, before me appeared _____,
to me personally known, being by me duly sworn or affirmed, whose address is 1000 Technology Drive,
O'Fallon, MO  63368-2240, did say that he/she is the Vice President of Mortgage Electronic Registration
Systems, Inc. (MERS), Mortgagee, and that the seal affixed to the foregoing instrument is the corporate
seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation, by
authority of its Board of Directors, and

_____

acknowledged said instrument to be the free act and deed of said corporation.

Notary Public _____

My Commission Expires: _____

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument        Form 3162  (rev. 1/09)
Page 5 of 5                                                                        MODMERS2.STP (10/2006)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Richard Burton Paul Monroe

Chapter 13
Case No. 18-43940 KHS

MEMORANDUM OF LAW

Debtor.

---

LoanCare, LLC ("Movant") submits this memorandum of law in support of its Motion for Relief from the stay in the above-entitled matter.

## FACTS

Movant holds a valid, duly perfected mortgage on real property owned by the debtor.  The unpaid payoff balance due under the mortgage and note as of January 1, 2020 is $122,748.29.

The debtor's confirmed Chapter 13 plan requires the debtor to make post-petition mortgage payments directly to Movant, when due. As of January 22, 2020, the total post-petition delinquency is in the amount of $2,858.97 less the suspense balance of $28.73 for a default total of $2,830.24, which represents approximately three (3) post-petition payments. (See Movant Affidavit and Exhibit B, Local Form 4001-1)  Accordingly, the debtor is in default under the terms of the mortgage and confirmed plan for failure to make timely payments.

## ARGUMENT

11 U.S.C. § 362(d) provides that on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under 11 U.S.C. § 362(a) of this Section for cause, including lack of adequate protection of an interest in property of such party in interest. Failure of a Chapter 13 debtor to make post-

confirmation payments to a mortgagee is sufficient cause for relief from the automatic stay. *In re Borm,* 508 B.R. 104, 106 (8th Cir B.A.P. 2014); *see also Reinbold v. Dewey County Bank*, 942 F.2d 1304 (8th Cir. 1991); s*ee also First Federal Sav. & Loan Asso. v. Whitebread,* 18 B.R. 192 (Bankr. D. Minn. 1982).

The debtor has failed to make the regular mortgage payments under the mortgage and confirmed Chapter 13 plan. As the Eighth Circuit Bankruptcy Appellate Panel stated in *In re Martens,*

> The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without remedy because of the bankruptcy proceeding."

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted). Section 362(d)(1) permits relief from stay for "cause".

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis... "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.

*In re Texas State Optical,* Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)(citations omitted). The standard for "cause" under § 362(d)(1) is broad, and may extend beyond one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985)

Because the debtor has failed to make the regular post-petition payments under the mortgage and confirmed Chapter 13 plan, "cause" exists within the meaning of § 362(d)(1) to grant relief from the automatic stay.

WHEREFORE, LoanCare, LLC respectfully requests this Court to grant Movant relief from the automatic stay of 11 U.S.C. § 362(a).

Dated:  January 29, 2020

USSET, WEINGARDEN & LIEBO, P.L.L.P.

By: /E/ Kevin T. Dobie
      Kevin T. Dobie, #388322
      Attorney for Movant
      4500 Park Glen Road, #300
      Minneapolis, MN 55416
      (952) 925-6888
      kevin@uwllaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Richard Burton Paul Monroe

Chapter 13
Case No. 18-43940 KHS

UNSWORN DECLARATION
FOR PROOF OF SERVICE

Debtor.

---

I, Kaye M. Jensen, employed on this date by USSET, WEINGARDEN, & LIEBO PLLP attorneys licensed to practice law in this court, with office address of 4500 Park Glen Road, Suite 300, Minneapolis, Minnesota 55416, upon penalty of perjury, declares that on January 29, 2020, I served the annexed Notice of Hearing and Motion for Relief from Automatic Stay upon each of the entities named below by mailing to them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Minneapolis, Minnesota, addressed to each of them as follows:

Richard Burton Paul Monroe
368 Wilderness Dr
Chaska, MN 55318

**CERTIFIED MAIL**
Select Portfolio Servicing
Attn: Timothy O'Brien, CEO
3217 Decker Lake Dr
West Valley City, UT 84119

and delivered by email notification under CM/ECF on the day e-filed with the court to each of them as follows:

Office of the United States Trustee

Gregory A Burrell, Chapter 13 Trustee

Jesse A. Horoshak, Esq.

/E/ Kaye M. Jensen
Kaye M. Jensen

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Richard Burton Paul Monroe

Chapter 13
Case No. 18-43940 KHS

Debtor.

_____

## ORDER GRANTING RELIEF FROM STAY

This case is before the court on the motion of LoanCare, LLC, for relief from the

automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. §

362(d) to warrant relief.


**IT IS ORDERED**:

1.     The motion for relief from stay is granted as follows.

2.     The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such

that the movant may exercise its rights and remedies under applicable non-

bankruptcy law with respect to the following property:

Unit No. 29, CIC Number 39, Pioneer Pointe Coach Homes, a
Condominium, Carver County, Minnesota.

3.     Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective

immediately.

4.     The Chapter 13 Trustee shall make no further payments on the pre-

petition arrears claim of Movant.


Dated:  _____                    _____
                                       United States Bankruptcy Judge